UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 21-245 (APM) |
| | ) | |
| SHANE JENKINS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY TO GOVERNMENT RESPONSE TO DEFENDANT'S MOTION
TO REVOKE DETENTION ORDER**

COMES now the defendant, Shane Jenkins, by and through undersigned counsel, and replies to the government's response to the defendant's motion to revoke detention order. The government filed a response on May 18, 2021 where it argued that Mr. Jenkins is a "danger to the community, and is a "flight risk." The government also argued that there are no conditions or combinations of conditions that would reasonably assure the safety of the community and his appearance at future court proceedings. Lastly, the government asserted that this is a presumption case, and that the defendant did not rebut the presumption as to risk of flight. *See* Dkt No. 14.

I.  **The Government's Portrayal of Mr. Jenkins's Alleged Conduct is Not Entirely Accurate**

The government's resuscitation of the alleged conduct fails to accurately portray what occurred and is missing some important factors. Firstly, the government claimed that Mr. Jenkins took a "leading role" in pushing against the USCP and MPD officers. *Id*. at pg. 8. However, government's Exhibit 1 does not show him actively pushing against the officers. The

1

video submitted shows Mr. Jenkins in the midst of a very crowded area where individuals are moving in different directions, however he is not using the force of his body to move towards the officers.  There is certainly no suggestion that he is leading any effort whatsoever.  There is also no additional evidence presented that he was a part of any unified organization such as the "Proud Boys," "Antifa," or the "Oath Keepers."

Next, the government speculated, based on a 3 second video, that Mr. Jenkins was "gritting his teeth," while shoving another rioter.  *Id*. at pg. 9.  The government later argued that this is an indication that he was "aggressive even towards a fellow rioter." *Id*. pg. 20.  There is no way to determine what actually occurred in that 3 second video.  The government is purely speculating that Mr. Jenkins's intent was to act aggressively towards that individual.  Mr. Jenkins could have pushed him for a variety of reasons, including potentially defending himself or another person in a crowd of individuals, some of which were acting impulsively and irrationally.  In fact, a video that was produced to the defense on May 17, 2021, shows that Mr. Jenkins was attempting to help an officer who was pulled into the crowd by helping to lead him to a doorway where he would be safe.  *See* Defense Exhibit A at min. 3:30-7:13.  His intentions in all the confusion is made clear when he gives a "thumbs up" as soon as the officer reaches safety.  So, the accusation that Mr. Jenkins is just an aggressive person who had the sole intention of harming the officers is not accurate.

The government further argued that because Mr. Jenkins brought a tomahawk to the Capitol that he intended to engage in violence.  *See* Dkt. No. 14 at pg. 10.  The government tried to prove its point by citing to Facebook chat conversations that discuss him bringing a tomahawk and tactical blades.  However, the context of the conversation outlined in the government's response actually implies bringing the weapons for protection in the event that there is a "war."

*Id.* at pg. 11. The chat states, "I do not like the idea of a war popping off and all I can do is punch, lol." *Id*. He never states that his intention is to start the war or to use the weapons on any individual in the offensive. Rather, he expresses his desire to have protection in the event that violence does erupt. The government also provides a chat exchange where Mr. Jenkins allegedly tells someone he is "taking tomahawks and knives," in response to someone saying, "Be safe." *Id.* at pg. 12. Again, when considering the context of the conversation, Mr. Jenkins is assuring his friend that he will be safe because he is bringing protection. Lastly, the government provides a series of comments made after January 6, 2021 and uses them to speculate as to Mr. Jenkins's intentions that day. There is no evidence that Mr. Jenkins took any affirmative actions after January 6, 2021 to suggest he would engage in future violence. The government's attempt to use this "after the fact" political banter to show he is a danger to the community is not clear and convincing as they were mere words spoken with very little context. Speculation as to intentions behind these words is not sufficient to meet the burden of clear and convincing evidence.

    II.    **Although the rebuttable presumption applies, there is evidence to rebut the presumption and Mr. Jenkins is not a flight risk.**

    Although this is a presumption case, Mr. Jenkins has provided sufficient evidence to rebut the presumption. The defendant's burden "is only a burden of production; the burden of persuasion remains with the government." *United States v. Taylor*, 289 F.Supp.3d 55, 63 (D.C. Cir. 2018). Mr. Jenkins has already met his burden of production with regards to danger to the community in both the motion to revoke the detention order and in this reply to the government's response. The burden lies now with the government to show by clear and convincing evidence that no conditions can assure the safety of the community. While the government has provided some evidence, it is not clear and convincing. The government again pointed to his criminal

history when it argued that Mr. Jenkins is among the "most serious offenders." *See* Dkt. No. 14 at pg. 15. However, it again fails to provide any specific facts or circumstances surrounding those prior convictions to support its claim that Mr. Jenkins is a danger.

The government next cited to *Maryland v. King* to suggest that a "defendant's history of violence offers some of the strongest evidence of his future dangerousness." 569 U.S. 435, 453 (2013). However, that case only dealt with whether it is appropriate to obtain a complete DNA identification to determine whether the defendant was a suspect in a violent crime in order to determine if bail was appropriate. *Id.* Part of the Court's reasoning was that, "a person arrested for one offense but knows he has yet to answer for some past crime may be more inclined to flee," and "knowing that the defendant is wanted for a previous violent crime is especially probative of the Court's consideration of 'danger to the community." *Id.* Mr. Jenkins is not wanted for a prior violent crime and has no pending cases. While his history and circumstances is relevant to the bail determination, it is but one factor among many to be considered. When assessing this one factor, the government still has not provided the nature and circumstances of his prior conduct to support its claim that Mr. Jenkins committed "violent" acts in the past.

The government also asserted that the comparable cases provided in the defense's motion did not share any of the factors in this case warranting detention of the defendant. *See* Dkt. No. 14 at pg. 21. However, that is contradictory to what the government has presented in its response. For example, the government argues in its response that an important part of the detention analysis is whether the defendant carried any weapons and pointed to Mr. Jenkins's possession of a tomahawk. In *United States v. Vitali Gossjankowski*, 1:21-cr-123, the defendant was carrying a Taser, which is a dangerous weapon and is capable of causing serious injury. Similarly, the government argued it its response that an important part of the analysis is whether

4

there was contact with law enforcement and pointed to Mr. Jenkins's throwing of items towards the officers. In *United States v. Mark Leffingwell*, 1:21-cr-005, the defendant allegedly punched an officer with a closed fist. So, these cases provided do contain similar alleged conduct that the government is now asserting should warrant detention here. The defense submitted in its motion that these cases did not involve similar criminal histories. However, when looking at the conduct the courts decided that these defendants should be released.

      Mr. Jenkins is not a flight risk and there is ample evidence to rebut the presumption that he is. Firstly, the magistrate court did not find that he was a flight risk. *See* ECF Dkt. No. 6 pp. 17-19. Although this review is *de novo*, it is important that another court reviewed this factor and made the determination that the defendant did not pose a risk of flight. Mr. Jenkins had a steady residence, lived in the area for quite some time, and had gainful employment. The only reasons the government believes Mr. Jenkins is a flight risk is due to the (1) weight of the evidence, (2) his prior history, and lastly (3) his belief that he did nothing wrong.

      Defense counsel and the government disagree on the estimated guideline range and that is because the government believes certain enhancements will ultimately apply that the defense does not think are applicable. Despite that disagreement, Mr. Jenkins does not have a motive to flee because his entire livelihood depends on him working and residing in Houston. Furthermore, there are conditions that can assure his appearance as discussed in the motion to revoke the detention order. Mr. Jenkins does have prior charges such as evading and resisting arrest. He also has prior revocations of parole. However, those charges mostly date back to the year 2000 and 2001. The last conviction for resisting arrest was in 2013, over 7 years ago. *See* PSR, ECF Dkt. No. 9. Also, there is no indication that his prior parole revocations had anything to do with absconding. Notably, the most recent experience with law enforcement was him

being cooperative while being taken into custody for the instant offense.

Lastly, the government again speculates as to Mr. Jenkins's intentions to support its claim that Mr. Jenkins believes he did nothing wrong. Words that occur in chat exchanges online do not provide sufficient insight into whether or not an individual is remorseful for their actions. There are so many reasons why an individual may type words or post something that does not reflect their true beliefs and feelings. Also, the context of these conversations is unknown and it is not possible to discern any intentions behind these political comments.

For these reasons, the government has not met its burden by a preponderance of the evidence that Mr. Jenkins poses a "risk of flight" and has not met its burden by clear and convincing evidence to show that Mr. Jenkins is a "danger to the community."

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
D.C. Bar No. 1031486
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500
Maria_Jacob@fd.org