**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

|                                |     |                              |
| ------------------------------ | --- | ---------------------------- |
| **UNITED STATES OF AMERICA**   | :   |                              |
|                                | :   | **Case No. 21-CR-245 (APM)** |
| **v.**                         | :   |                              |
|                                | :   |                              |
| **SHANE JENKINS,**             | :   |                              |
|                                | :   |                              |
| **Defendant.**                 | :   |                              |
|                                | :   |                              |

**DEFENDANT SHANE JENKINS' MOTION TO DIMISS COUNT TWO OF THE
SECOND SUPERSEDING INDICTMENT**

Defendant Shane Jenkins ("Mr. Jenkins"), by and through undersigned counsel,

respectfully moves this Court to dismiss Count Two of the Second Superseding Indictment,

pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

**INTRODUCTION**

The Second Superseding Indictment charges that, on January 6, 2021, Mr. Jenkins

unlawfully entered a "restricted area" at the U.S. Capitol.  18 U.S.C. § 1752(a)(1).  While there,

Mr. Jenkins allegedly used a "deadly or dangerous weapon" and interfered with a law

enforcement officer during a "civil disorder," § 231(a)(3), and, in connection therewith he

allegedly "corruptly obstructed" an "official proceeding," *i.e.*, "Congress's certification of the

Electoral College Vote," in violation of 18 U.S.C. § 1512(c)(2).

Section 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction of

Justice". *See generally* 18 U.S.C. §§ 1501-1521.  As the Ninth Circuit has carefully considered

and recognized, based on the plain language of the statute, an offense under Section 1512(c)

does not prohibit the obstruction of every governmental function; it only prohibits the

obstruction of proceedings such as a hearing that takes place before a tribunal. *See United States*

*v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013).  Stated differently, Section 1512(c), by its

plain language, does not criminalize the obstruction of legislative action by Congress.  Any

alleged obstruction of the certification of an Electoral College vote is simply outside of the

reach of Section 1512(c).

## ARGUMENT

### I.      Standard of Review

Rule 7 of the Federal Rules of Criminal Procedure provides that "the indictment or

information must be a plain, concise, and definite written statement of the essential facts

constituting the offense charged…" Fed. R. Crim. P. 7(c)(1).  This rule performs several

constitutionally required functions, including protecting against prosecution for crimes based on

evidence not presented to the grand jury, as required by the Fifth Amendment. *See*, *e.g.*, *United

States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

A defendant may move to dismiss an indictment on the basis of a "defect in the

indictment or information," including a "lack of specificity" and a "failure to state an offense."

Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  In considering a Rule 12 motion to dismiss, "the Court is

bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp.

2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962).  Accordingly,

"the Court cannot consider facts beyond the four corners of the indictment." *United States v.

Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

### II.     Count Two Fails to State an Offense.

As noted above, Count Two charges that Mr. Jenkins allegedly attempted to, and did,

obstruct, influence and impede an "official proceeding," namely, "Congress's certification of the

Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United

States and §§ 15-18."  However, as set forth below, the Electoral College certification before

Congress does not constitute an "official proceeding" under 18 U.S.C. § 1512(c)(2).

      **1.**      **§ 1512 Must Be Strictly Construed.**

To determine legislative intent, courts "always, [] begin with the text of the statute." *Am.*

*Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3ed 29, 33 (D.D. Cir. 2013).  "It

is elementary that the meaning of a statute must, in the first instance, be sought in the language in

which the act is framed, and if that is plain … the sole function of the courts is to enforce it

according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.D. Cir. 2014) (*quoting*

*Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)).  "The search for

the meaning of the statute must also include an examination of the statute's context and history."

*Hite*, 769 F.3d at 1160.

"[D]ue process bars courts from applying a novel construction of a criminal statute to

conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its

scope." *United States v. Lanier*, 520 U.S. 259, 268 (1997).  Specifically in relation to § 1512, the

Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the]

… statute both out of deference to … Congress … and out of concern that a fair warning should

be given to the world in language that the common world will understand, of what the law

intends to do if a certain line is passed[.]" *United States v. Arthur Andersen, LLP*, 544 U.S. 696,

703 (2005) (internal citations omitted).

      **2.**      **An "Official Proceeding" Under § 1512(c) is Judicial or Quasi-Judicial in Nature.**

A review of the text, history, and judicial interpretation of § 1512, especially in light of

the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that

this statute, which punishes obstruction of "official proceedings," does not apply to the Electoral College certification.

*Ermoian* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in Section 1512(c) and defined in Section 1515. *See Ermoian*, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512."). Although that case considered whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of the statute, the Court noted, "[a]s used in the statute, the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding'" and further noted, "[t]hat word is used — somewhat circularly — in each of the definitions for an 'official proceeding' and is key to the phrase's meaning." *Id*. at 1169.

Reviewing the plain language of Section 1515, the court explained that "[s]everal aspects of the definition for 'official proceeding' suggest that the legal — rather than the lay — understanding of the term 'proceeding' is implicated in the statute." *Id*. at 1170. As the court pointed out, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'action or series of actions.'" *Id*. (*citing* "Proceeding," Oxford English Dictionary). "Moreover, when used to define 'official proceeding,'" the court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id*.

The Ninth Circuit then turned to the broader statutory context, looking at Section 1515 as a whole, noting that "[t]he use of the preposition 'before' suggests an appearance in front of the agency sitting as a tribunal." *Id*. at 1171 (emphasis added). The court further looked to another

circuit's interpretation of the phrase "official proceeding" and noted, "[a]s the Fifth Circuit explained when addressing this same definition, 'use[ of] the preposition 'before' in connection with the term 'Federal Government agency' ... implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear." *Id*. (*quoting United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008)).  Additionally, the Ninth Circuit pointed out, "The use of the terms 'attendance', 'testimony', 'production', and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Id*. at 1172.  In conclusion, the *Ermoian* Court considered "the plain meaning of the term 'proceeding,' its use in the grammatical of the 'official proceeding' definition, and the broader statutory context" to hold that a criminal investigation is not an "official proceeding" under Section 1512(c). *Id*.; *see also United States v. Binette*, 828 F. Supp. 2d 402, 403-404 (D. Mass. 2011) (Finding that a "preliminary" SEC investigation did not constitute an "official proceeding" under § 1512 as compelled attendance, sworn testimony, and subpoena powers had not taken effect).

This interpretation, reasoning, and logic applies equally here.  Looking at Section 1512 as a whole, it is obvious that the statute solely prohibits conduct at hearings that affect the administration of justice. *See* 18 U.S.C. § 1512; *se*e also *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1039 (11th Cir. 2000) ("Section 1512... applies to attempts to prevent or influence testimony not only in federal courts but also before Congress, federal agencies, and insurance regulators." (emphasis added)); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ga. 2006) ("…§ 1515(a)(1) … describe(s) events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, Congressional testimony, and insurance regulatory hearings" (emphasis added).

The statute repeatedly references "proceedings" in the context of investigations and legal proceedings related to a *criminal* investigation. *Id.* Even the title of the offense relates to "Tampering with a witness, victim, or an informant." *Id.*; *see also I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text."). There is little doubt, based on the language of the statute, that the "official proceeding" — and more specifically, the "proceeding before Congress" — that was allegedly obstructed by Mr. Jenkins must relate to a Congressional hearing affecting the administration of justice.

This is consistent with the case law that has clarified the meaning of the statutory language at issue here. *See e.g. Arthur Andersen LLP*, 544 U.S. at 708 (Interpreting Section 1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a] judicial proceeding" in order to have the "requisite intent to obstruct"); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir.) (Considering application of Section 1512 and noting "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries"), *cert. denied*, 571 U.S. 888 (2013); *United States v. Sampson*, 898 F.3d 287, 300 (2nd Cir. 2018) (Noting Section 1512 "broadly criminalizes various forms of witness tampering").

### 3. Other Tools of Statutory Interpretation Support Mr. Jenkins' Motion to Dismiss.

Sections 1512 and 1515 are contained in Chapter 73 of Title 18 of the United States Code. Examining the surrounding statutory provisions in Chapter 73 further support Mr. Jenkins' interpretation of the statute at issue. *See NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n*, 961 F.3d 421, 426 (D.C. Cir. 2020) (*quoting Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014)) ("A statutory provision that may seem ambiguous in isolation is often

clarified by the remainder of the statutory scheme[,] because only one of the permissible

meanings produces a substantive effect that is compatible with the rest of the law.").  Each one

of the statutes contained in Chapter 73 proscribe obstructive conduct for very specific subjects

and settings related to the administration of justice.  For instance, Section 1510 deals with

obstruction of criminal investigations.  Sections 1516 through 1518 criminalizes obstruction of

specific types of other investigations. *See* 18 U.S.C. §§ 1516 (Obstruction of a federal audit);

1517 (Obstruction of examination of financial institution); 1518 (Obstruction of investigations of

health care offenses). Section 1519 prohibits the destruction, alteration, or falsification of records

during a federal investigation.

Other provisions in Chapter 73 also explicitly relate to the administration of justice. *See*

18 U.S.C. §§ 1503, 1504 (Influencing or injuring a juror); 1513 (Retaliating against a witness,

victim, or informant); 1521 (Retaliating against a federal judge or law enforcement officer by

false claim or slander of title).  There is even a statute to prohibit "picketing or parading" near

the residence of a judge, juror, witness, or court officer "with the intent of interfering with,

obstruction, or impeding the administration of justice." 18 U.S.C. § 1507 (emphasis added).  As

all these laws are related to the obstruction of the administration of justice and serve to protect

participants in the administration of justice, it follows that, in order to violate Section 1512(c),

there must be some allegation that the "official proceeding" allegedly obstructed, in fact, related

to the administration of justice.

Although not required due to the plain meaning of the statute, this Court can also take

comfort by looking at the legislative intent behind Section 1512(c) to know what was meant by

"official proceeding" as used in that statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*,

545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the

7

extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."). Section 1512(c) was passed as part of the Sarbanes-Oxley Act of 2002, "An Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." Sarbanes–Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.

The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. REP. NO. 107-146, at 2 (2002) (emphasis added).  As for the use of the term "official proceeding" in Section 1512(c), because the legislation was due in part to the collapse of Enron, the Committee Report noted that much of Enron's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." *Id*. at 4.  Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id*. at 6–7.  In short, when considering the Act's preamble and the legislative history, it is clear that Section 1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice and was not intended to apply in all circumstances where any government function may have been impeded.

### 4.   Department of Justice's Own Interpretation of § 1512(c) Supports Mr. Jenkins' Motion to Dismiss.

Mr. Jenkins' interpretation of Section 1512(c) is even consistent with the Department of Justice's own interpretation as reflected in their Criminal Resource Manual discussing the application of Section 1512:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.

Criminal Resource Manual, CRM 1729, Department of Justice (emphasis added) (available at:

https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-

processes-tampering-victims-witnesses-or).

**5.  Congress Has Used Other Terms to Describe Interference with the Electoral College Certification.**

Mr. Jenkins submits that the government incorrectly conflated an "official proceeding" under § 1512 with a "federally protected function" under 18 U.S.C. § 231(a)(3) or the "official business" of Congress under 40 U.S.C. § 5104(e)(2)(c).  In Count Two of the Second Superseding Indictment, for example, the government charged Mr. Jenkins with Civil Disorder under 18 U.S.C. § 231(a)(3), alleging that his actions affected "the conduct and performance of any federally protected function."  The term "federally protected function" is defined as:

> [A]ny function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails.

18 U.S.C. § 232(3).

Similarly, in Counts Nine and Ten, the government charged Mr. Jenkins with violating 40 U.S.C. § 5104, which prohibits entering "any of the Capitol Building[s]" intending "to disrupt the orderly conduct of official business[.]" 40 U.S.C. § 5104(e)(2)(D); 40 U.S.C. § 5104(e)(2)(F).

**III.**        **Mr. Jenkins' Conduct Does Not Fit Within the Scope of Section 1512(c)(2).**

Section 1512(c)(2) does not make Mr. Jenkins' actions on January 6th criminal.  In *United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022). this Court conducted a thorough analysis of the various interpretations of the statute and came to the conclusion that the statute "either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2)." *Id.* at 28, the Court's Memorandum Opinion has been attached hereto as Exhibit "A".  It further held that the "text, structure, and development of the statute over time suggest that the second reading is the better one", but that "the first is, at a minimum, plausible." *Id.*  As such, the Court was left with a "serious ambiguity in a criminal statute." *Id.*

Courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute," *United States v. Aguilar*, 515 U.S. 593, 600 (1995), and have "construe[d] penal laws strictly and resolve[d] ambiguities in favor of the defendant," *United States v. Nasir*, 17 F.4th 459, 473 (3d Cir. 2021) (*en banc*) (Bibas, J., concurring) (*citing Liparota v. United States*, 471 U.S. 419, 427 (1985)).  Applying these principles here "gives citizens fair warning of what conduct is illegal, ensuring that [an] ambiguous statute[] do[es] not reach beyond [its] clear scope." *Nasir*, 17 F.4th at 473 (Bibas, J., concurring).  And it makes sure that "the power of punishment is vested in the legislative, not the judicial department." *Id*. (*quoting United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.)).

This Court therefore concluded in Miller that "§ 1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Miller*, at 28.

In *Miller*, the government argued that Miller's conduct "'otherwise obstruct[ed], influence[d], or impede[d]' Congress's ability to review documents that it was constitutionally

and statutorily required to receive and act upon, thereby obstructing the certification of the

Electoral College vote." *Miller*, at 29.  This Court, however, noted that the government did not

set forth these facts in the indictment, and cannot consider them on Miller's Motion to Dismiss.

*Id.*; *see also United States v. Akinyoyenu*, 199 F. Supp. 3d. 106, 109–10 (D.D.C. 2016).

Furthermore, the government did not argue that Miller himself took or attempted to take any

action with respect to those records or documents. *Id.*

In this case, just like in *Miller*, Mr. Jenkins is not alleged to have taken any action with

respect to a document, record, or other object in order to corruptly obstruct, impede or influence

an official proceeding.  The Second Superseding Indictment does not allege or even imply that

Mr. Jenkins took any such action.

Count Two of the Second Superseding Indictment should be dismissed.

## CONCLUSION

Based upon the foregoing, it appears that, in its haste to prosecute the Capitol protestors

with every conceivable violation and to proverbially "throw the book" at them, the government

has taken liberties with the application of 18 U.S.C. § 1512(c).  Indeed, no court has ever

interpreted an "official proceeding," as that term is used in Section 1512(c), so broadly as to

encompass an event such as the certification of the Electoral College vote.  The government is

asking this Court to go well beyond the plain meaning of the term "proceeding," its use in the

grammatical context of the "official proceeding" definition, the broader statutory context, and the

legislative history.

While the Electoral College certification was arguably a "federally protected function,"

and definitely "official business" of Congress, it clearly was not an evidence-gathering, formal,

judicial, or quasi-judicial event which is the purpose behind the enactment of 18 U.S.C. §

1512(c).  The government has attempted to stretch 18 U.S.C. § 1512(c) beyond its plain meaning and beyond the intent of Congress when it enacted it.  Nevertheless, "hard cases cannot be permitted to make bad law." *Morgan County v. Allen*, 103 U.S. 498 (1880).  Count Two as charged in the Second Superseding Indictment fails to state an offense and should be dismissed.

Respectfully Submitted,

*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire
Blerina Jasari, Esquire
Boyle & Jasari
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036
Email: dboyle@dennisboylelegal.com
          bjasari@dennisboylelegal.com
Phone: (202) 430-1900

*Counsel for Defendant Shane Jenkins*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January 2023, I electronically filed the foregoing

Motion and proposed Order with the Clerk of Court using the CM/ECF system, which will send

an electronic notification of such filing to all counsel of record.


*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire