**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Crim. No. 21-CR-00245 (APM)** |
| **SHANE JENKINS,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**MOTION _IN LIMINE_ REGARDING EVIDENCE ABOUT THE SPECIFIC**
**LOCATIONS OF U.S. CAPITOL POLICE SURVEILLANCE CAMERAS**

The United States of America moves _in limine_, pursuant to Fed. R. Evid. 401, 403, and
611(b), to restrict the presentation of evidence regarding the specific position of U.S. Capitol
Police surveillance cameras.

**INTRODUCTION**

To meet its burden of proof at trial, the government will present video evidence from a
variety of sources, including Capitol Police surveillance footage.  As detailed in the Declaration
of Thomas A. DiBiase (Exhibit 1), the Capitol Police maintains an extensive closed-circuit video
system which includes cameras inside the Capitol Building, inside other buildings within the
Capitol complex, and outside on Capitol grounds.  These cameras captured thousands of hours of
footage from the breach of the Capitol and have been instrumental in documenting the events of
January 6, 2021.

However, U.S. Capitol Police's surveillance system also serves an important, and ongoing,
function in protecting Congress and, by extension, national security.  In particular, the footage
from the system is subject to limitations and controls on access and dissemination.  And, to find
relevant footage from the Capitol Police's surveillance system and adequately prepare for trial,

one would need to use maps which display the locations of the interior and exterior cameras. The government has therefore provided the defense with maps that display these locations. However, due to the sensitive nature of these items, the government seeks an order limiting the defense from probing, during cross-examination, the exact locations of Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.[1]

## ARGUMENT

### I.     This Court Has the Discretion to Limit the Presentation of Evidence and Cross-Examination of Witnesses at Trial

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States,* 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri,* 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v. Butts,* 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination

---

[1] These maps have been disclosed to the defendant but, pursuant to the terms of the protective order, have been designated Highly Sensitive. Moreover, these maps have been designated as "Security Information" under 2 U.S.C. §1979 which forbids their use without the approval of the Capitol Police Board.

include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

While limiting a defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol,* 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp,* 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with response to matter only related to an affirmative defense and not elicited through direct exam). Preventing the defendant from exploring the topics identified above will not infringe his Confrontation Clause right because the exact positions of cameras, and the camera map, implicate national security concerns, are of marginal probative value, and any probative value can be addressed without compromising the Capitol Police's protective function.

## II.   The Defendant Should Be Precluded from Questioning Witnesses about the Exact Positions of Capitol Police Cameras, Introducing Such Evidence Himself, or Admitting Capitol Police Maps of Camera Coverage

Here, the bulk of the government's video evidence will come from sources other than the Capitol Police: body-worn camera footage and videos taken by other members of the crowd. But

nonetheless, to establish a violation of 18 U.S.C. § 231(a)(3), the government must prove that a civil disorder occurred.  Thus, to prove violations of Counts Two, Four, and Six, the government will offer footage from Capitol Police cameras showing the crowd occupying restricted areas, breaching police lines, and assaulting police.  A Capitol Police witness who was present in the Command Center on January 6, 2021 is expected to explain how the Capitol Police monitored and responded to the violent mob.[2]

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded in light of the ongoing security needs of the Capitol.   The defense can probe what Capitol Police's cameras show, and what they don't, by asking about the general location of each camera.  For example, a camera positioned inside the Lower West Terrace tunnel can be described as "inside the tunnel, facing out" without describing its exact height and depth within the tunnel and without showing a picture of the camera.   Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning.  A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not.   Additionally, presenting the map of all Capitol Police cameras would risk compromising these security concerns for no additional probative value: the map contains numerous cameras installed in parts of the Capitol that the defendant did not visit.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger to national security.  *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs

---

[2] The government anticipates that the defendant will not challenge this general evidence about the existence of a civil disorder.

any probative value).   If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the general public.   Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of the Capitol where cameras were not installed.   More specific presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.   *Id.*

### III.   The Government Requests an *In Camera* Proceeding to Determine the Admissibility of Certain Evidence

If the defense believes that presentation of the exact locations of the Capitol Police cameras is necessary, or that presentation of the Capitol Police map is necessary, the government requests that the Court conduct a hearing *in camera* to resolve the issue.   As noted, in this case, disclosure of certain information could prove detrimental to the Capitol Police's ability to protect members of Congress, and could affect our national security.   Courts have found such considerations justify *ex parte*, *in camera* proceedings. *See United States v. Nixon,* 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles,* 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor,* 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown,* 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same).   At any such hearing, the defendant should be required to make "a proffer of great specificity" regarding the need for the evidence and the scope of his questions. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991)

(requiring such proffer where evidence of defendant's belief might have permissible and impermissible purposes, and careless admission would raise issues under Fed. R. Evid. 403).

**CONCLUSION**

For these reasons, the United States requests that this court enter an order, as described above, limiting the presentation of evidence about the precise locations of Capitol Police surveillance cameras, including through the use of Capitol Police maps.  If this court determines an evidentiary hearing is necessary to rule on this motion, the government asks that the hearing be held *in camera*.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: */s/ David J. Perri*
David J. Perri
Assistant United States Attorney Detailee
W.V. Bar No. 9219
United States Attorney's Office
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
304-234-0100

By: */s/ Holly F. Grosshans*
Holly F. Grosshans
Assistant United States Attorney
D.C. Bar No. 90000361
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6737

## CERTIFICATE OF SERVICE

I, David J. Perri, Assistant United States Attorney for the District of Columbia, hereby

certify that the foregoing MOTION *IN LIMINE* REGARDING EVIDENCE ABOUT THE

SPECIFIC LOCATIONS OF U.S. CAPITOL POLICE SURVEILLANCE CAMERAS has

been electronically filed with the Clerk of the Court using the CM/ECF system, which will

send notifications of such filing to the following:

> Dennis Boyle, Esq.
> Blerina Jasari, Esq.
> Boyle & Jasari,
> 1050 Connecticut Ave., NW
> Suite 500
> Washington, D.C. 20036

Dated: January 30, 2023.

By:   */s/ David J. Perri*
        David J. Perri
        WV Bar Number: 9219
        Assistant United States Attorney Detailee
        United States Attorney's Office
        Northern District of West Virginia
        1125 Chapline St., Suite 3000
        Wheeling, WV 26003
        (304) 234-0100

By:   */s/ Holly F. Grosshans*
        HOLLY F. GROSSHANS
        Assistant United States Attorney
        D.C. Bar No. 90000361
        U.S. Attorney's Office for the District of
           Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-6737